J. O. INGALS, Appellant, v. JOHN L. FERGUSON, Respondent.

St. Louis Court of Appeals, November 7, 1894.

1. Married Women: ESTOPPEL. A married woman may create an estoppel against herself in respect to her separate estate to which she can pass title by parol and delivery. And such an estoppel results, when another person with her acquiscence assumes to sell such property as his own, and the purchaser is led thereby to treat the seller as the owner.

2. ———: ———. But *held* by BOND, J., *dissenting*, that the evidence in this cause did not warrant the application of the foregoing principle.

3. Replevin: RIGHT OF ACTION BY TENANT IN COMMON.- *Semble*, that one of several owners in common can not maintain an action of replevin against a stranger to the title, who is in possession.

4. ———: ———: FORM OF JUDGMENT. But *held*, BOND, J., *dissenting*, that the judgment for the defendant in such an action must, even when the property in controversy has been taken from him, be limited to a judgment for costs, and should not entitle him to the recovery of the property or its assessed value.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

CERTIFIED TO SUPREME COURT.

*Geo. S. Grover* for appellant.

*Chas. M. Napton* for respondent.

BIGGS, J.—This is an action for replevin of a mare. The plaintiff gave bond, and the animal was delivered to him. The jury found the issues for the defendant, and assessed the value of the mare at $70 and the damages at $50. Thereupon the court entered judgment in favor of the defendant for the·

return of the mare or the assessed value, and also the damages. From that judgment the plaintiff has appealed.

There is but little conflict in the evidence touching the controlling facts. In 1887, E. W. Green and Eliza C. Green, his wife, bought at public sale a lot of personal property aggregating in value over $1,000. The mare in controversy was included in the purchase. Whether the property was bought under a partnership agreement, the evidence does not disclose. It merely shows a joint purchase. The individual funds of Green and those of his wife were used in paying for the property; in what proportion does not appear. In February, 1888, a farm belonging to Green and his wife was about to be sold under a deed of trust. The holder of the mortgage debt agreed to postpone the foreclosure sale, if Green would pay one hundred dollars on the debt. Green borrowed the amount from the plaintiff, and secured the extension. To secure the loan Green gave to the plaintiff an absolute bill of sale of the mare in controversy, with the private understanding that Green should have the right of repurchase upon repayment of the loan with interest and reasonable charges for the keep of the animal. Under this agreement the mare was delivered to the plaintiff, and he retained possession of her until September following. The evidence tends to show that Mrs. Green knew of the facts attending this transaction, and made no objection to it. Whether plaintiff was advised of her joint ownership is not shown. In September, 1888, Green executed a new note to plaintiff for $200, which amount included the original loan, the charges for keeping the mare for six months, and perhaps some other small items of indebtedness. As additional security Green gave plaintiff a chattel mortgage on two colts. To save the expense of keep-

ing the mare in the city it was then agreed that Green should take her to the country, but that she should remainthe property of the plaintiff until his debt was fully paid. Afterwards Green made a payment of $90 on plaintiff's debt. The two colts disappeared, and the plaintiff realized nothing from them. This is the history of plaintiff's title to the mare, as shown by his evidence.

The defendant held the mare as the agent or bailee of R. N. Alexander. On the eighth day of May, 1890, Green and wife executed a chattel mortgage to secure the payment of certain indebtedness due from them to F. W. Peters. The property is described in the mortgage as follows, to wit:

"One green painted skeleton wagon; one black painted two-seated park wagon with top; one Murphy farm wagon; one Giant corn grinder; one Dicks, Canton, Ohio, feed cutter; one yellow painted racing cart; one new Clipper mowing machine; one Calhoun hay rake; one pair gray mules, gray mane and tail, nine and ten years old; one bay Jersey cow, called Evergreen Queen, with light brown stripe running on center of back; one fawn and white Jersey cow, called Piute O'Fallon; one fawn and white Jersey O'Fallon cow; one registered Jersey bull, squirrel-gray, about one year old, called Melrose Gold; five Jersey heifers; one Cornelia Sprague bay mare, two years old; one bay mare, called Fleda; one yearling colt, called Diamond Sprague; one weaning colt, called St. George Sprague; one set of rubber mounted double harness; one set of farm harness; one set of track harness; one Caffery sulky; one Toomy sulky; one driving cart; one black stallion called Valentine Sprague; one Domestic sewing machine, number 1139046; two W. stands; one Buck & Brilliant cook stove and utensils; one Quick Meal gasoline stove; one

W. table; three mattresses; three bed springs; one wash machine; six Brussels carpets; three walnut wardrobes; one fourth M. T. bureau; one M. T. wash stand; one W. bed-stead; one ebony mantel clock; one haircloth parlor set, eight pieces; two hanging lamps; one W. M. T. center table; one ash M. T. sideboard; one book rack, with fifty volumes of books; one Crown Jewel heating stove, with zinc and pipes; one ash secretoir table; one ratan seated rocker; six ash S. chairs; three W. M. T. bed room suits, three pieces each; one Famous heating stove, with zinc and pipe; all the halls and stair carpets; all the bedding, pillows, linen ware and mattresses; all the silver and plated ware; all the glassware; all other furniture and utensils in the house; all the stock and all the implements on the farm, known as Evergreen farm, in section 31, township 45, range 6, one mile west of Webster in Central township, St. Louis county, state of Missouri.''

Soon after the execution of the Peters' mortgage Green absconded, leaving his wife and creditors behind. Among the creditors was R. N. Alexander. To save, if possible, his debt, Alexander bought the Peters debt and took possession of the mortgaged property. He also took possession of the mare in controversy, claiming that she was conveyed by the mortgage. He afterwards sold her under the mortgage and bought her in. The plaintiff was present at the sale, and he notified the bidders of his claim to the mare. This is the evidence in support of the title of Alexander.

The court refused all instructions asked by the plaintiff, and gave all asked by the defendant. Among the defendant's instructions is the following:

''The jury are instructed that, if they believe from the evidence that said mare was the property of Eliza C. Green, and that plaintiff secured a deed from E. W.

Green only, and that he has not secured the title of Eliza C. Green, then they must find for the defendant."

There is no substantial evidence that Mrs. Green was the *sole* owner of the mare; for that reason the instruction ought to have been refused.

In reference to the ownership of Mrs. Green, Green testified as follows:

"I bought her (the mare) with part of my money and part of my wife's money, and never sold her. I had a transaction in regard to her with Mr. Ingals." Then follows the history of the dealings between the plaintiff and witness, as heretofore stated. E. W. Green, one of the defendant's witnesses and a son of E. W. Green, testified:

"I lived on the farm from 1884 to 1889, and knew the mare, Julia. My stepmother, Mrs. Eliza C. Green, and E. W. Green owned the property sold at the Scott sale; it was bought in my mother's name." Henry L. Sutton, the auctioneer, testified that E. W. Green bought at the Scott sale over a thousand dollars' worth of property; that the property was bid off in the name of his wife; that their joint note was given; that the note was paid in eight or ten installments of about seventy-five dollars each; that the payments were made by Green, and that Green told him that the money had been earned by Mrs. Green in teaching school. This was all the evidence bearing on the question of Mrs. Green's title.

What Green told Sutton about the money which he paid to him on the note was not competent evidence; but, as it was admitted without objection, it must be considered. Giving the testimony of Sutton due weight, it does not tend to disprove the fact testified to by Green and his son, that the property was owned jointly by Green and his wife and that the money of

each was used in its purchase. Conceding that the money paid to Sutton did belong to Mrs. Green, this leaves at least $250 of the purchase money unaccounted for. The purchase exceeded one thousand dollars, and under Sutton's testimony the note given did not exceed $750. Therefore, if the sole ownership of Mrs. Green is to rest on the fact merely that she paid the purchase money for the stock bought at the Scott sale, the claim has no support in the evidence.

The instruction is open to another serious objection. By it the jury were told that, if Mrs. Green did not sell the mare to the plaintiff, then there could be no recovery, thus entirely ignoring the plaintiff's evidence that Mrs. Green was fully advised of the action of her husband in pledging the mare for their joint benefit, and that she acquiesced in, or, at least, made no objection to, the transaction. A married woman in respect of her separate estate, to which she may pass the title by parol and delivery, may by her conduct or declarations create an estoppel against herself. *Rannels v. Gerner*, 80 Mo. 474; *Cottrell v. Spiess*, 23 Mo. App. 35. Therefore, in the present case, if Mrs. Green knew that her husband assumed to deal with the mare as sole owner, and she acquiesced therein, and the plaintiff was thereby deceived and gave credit to Green on the faith that he was the exclusive owner, then Mrs. Green, and a third person claiming under her, is estopped to assert her ownership.

In view of another trial, we deem it expedient to extend the discussion to other phases of the case. The judgment was in the usual form, that is, for the recovery of the mare or her assessed value, and the damages. This judgment was unauthorized. If the defendant had shown that Alexander had the full title, then the judgment would have been right. But the evidence will not admit of any such finding. Let us examine

Alexander's title.  His sole claim to the mare is that she was conveyed by the Peters' chattel mortgage.  In this he is mistaken.  The instrument describes certain property, including some live stock, in which it is not claimed that the mare Julia was included.  The, concluding sentence in the description, to wit, "all the stock and all implements on the farm known as the Evergreen farm, etc." was intended to fix the location of the property previously described, and not to include other property which might then be on the farm.  But, if the latter construction was permissible, there is no proof that the mare was on the farm at the time the mortgage was executed.  On the contrary, Green testified that, after he received her back from the plaintiff, she was off the farm a great deal of the time.

It has been decided quite often in this state that one tenant in common can not maintain replevin for the common property against his cotenant.  The reason is obvious.  Whether the action is maintainable by one of the joint owners against a person who is a stranger to the title, has not been decided; the weight of authority in other states, however, would seem to indicate that the defense of a joint ownership, is open to anyone.  *Collier v. Yearwood*, 5 Baxter (Tenn.), 581; *Hart v. Fitzgerald*, 2 Mass. 509; *Pickering v. Pickering*, 11 N. H. 141; *Reed v. Middleton*, 62 Iowa, 307; *Williams v. Patten*, 131 Mass. 50; *McArthur v. Laud*, 15 Me. 245.  Assuming that Green sold his interest in the mare to the plaintiff, and that Mrs. Green still holds her interest, the defendant would only be entitled to a judgment for costs.  He could not have a judgment for the *recovery* of the property, or its assessed value. *Cross v. Hulett*, 53 Mo. 397.

The contention made by appellant, that Green and wife held the mare as partnership property, has no foundation in fact. It is true that a husband and wife may own property jointly or may enter into a copartnership agreement (*Dunifer v. Jecko*, 87 Mo. 282), but a partnership can only be established by agreement or contract. The mere fact that two or more persons purchase property jointly does not of itself constitute a partnership.

The judgment of the circuit court will be reversed, and the cause remanded. As Judge BOND thinks that the opinion is opposed to the decisions of the supreme court in the following cases: *Cross v. Hulett*, 53 Mo. 397; *Blodgett v. Perry*, 97 Mo. 273; *Raysdon v. Trumbo*, 52 Mo. 35; *Fitzgerald v. Barker*, 96 Mo. 661; *Spooner v. Ross*, 24 Mo. App. 603, and other cases cited in his dissenting opinion, the cause will be certified to the supreme court. It is so ordered.

### DISSENTING OPINION.

BOND, J.—In the opinion of my associates this case is reversed for alleged error in the giving of the following instruction:

"The jury are instructed that, if they believe from the evidence that said mare was the property of Eliza C. Green, and that plaintiff secured a deed from E. W. Green only, and that he has not secured the title of Eliza C. Green, then they must find for defendant."

The objections urged in said opinion to this instruction are, *first*, that it is not supported by any substantial evidence tending to show that Mrs. Green was the sole owner of the mare.

Granting for the moment the validity of this objection, still there was no reversible error in the instruction *supra*, for the following reasons: Said opinion states

that it appears from the evidence that the mare in controversy was a "joint purchase" of Mrs. Eliza C. Green and her husband, and that the husband alone executed the instrument conveying or pledging the mare. It is obvious, according to this view, that the plaintiff took only the title of the husband, and became thereafter a tenant in common with Mrs. Green in the ownership of the said animal. As such cotenant, plaintiff, upon elementary principles of law, is debarred from bringing replevin for the possession of said mare either against his co-owner or her assignee or a stranger. This is the well settled law in this state, and in every well considered case elsewhere. *Pulliam v. Burlingame*, 81 Mo. 111; *Lisenby v. Phelps*, 71 Mo. 522; *Cross v. Hulett*, 53 Mo. 397; *Spooner v. Ross*, 24 Mo. App. 603; *Kamerick v. Castleman*, 23 Mo. App. 493; Cobbey on Replevin, section 229; Freeman on Cotenants, section 289. If, therefore, the plaintiff, as shown by these authorities, had no right of action against the defendant, an erroneous instruction given at the instance of defendant would not be ground of reversal. *Newman v. Lawless*, 6 Mo. 279; *Fitzgerald v. Barker*, 96 Mo. 661; *Keane v. Klausman*, 21 Mo. App. 485; *Hunter v. St. L., & Miss. Trans. Co.*, 25 Mo. App. 660.

I do not concede, however, under the facts in this record that my associates are correct in the theory, that there was no evidence given on the trial tending to show that the mare was the sole property of Mrs. Green.

The witness Sutton, who was one of the firm of Lanham & Sutton, the auctioneers who made the sale, testified, to wit:

"I attended the sale spoken of as the Scott sale on the Scott farm, north of the city several miles. It was a stock sale. I dont remember the name Julia. I do remember the sale of the mare you speak of. I am satis-

isfied that is the same mare, from what I have heard; she was sold at that sale. Judge Lanham sold all the horses; 1 made the entries of the purchases. This entry made about this mare is under the name of Eliza Green. The sale was made to Eliza Green. Eddie Green bid it in her name, and her name was entered on the firm books by myself. * * Mrs. Green was a teacher in the public schools. The payments on account of this purchase were made not oftener than once a month, and sometimes a longer space than once a month. I got the money from Mr. Green; he told me that they were Mrs. Green's monthly payments as a teacher. * * All the payments that were received by me and credited on the note were made in cash. There were six or eight payments. The note was not all paid. There was a note given for the purchase money, the note of Mrs. Green joined by her husband. The note was signed by both parties—secured by a chattel mortgage and also signed by both parties, that is, by E. W. Green and his wife too."

Speaking of said sale, the witness Green testified, to wit:

"I bought the mare and the stock out there at the Scott sale. The auctioneers were Judge Lanham and Henry L. Sutton; Lanham called the sale and Sutton wrote it down; I told him at the time that I purchased this mare Julia to put her down in the name of my wife; and that was done. All the property I bought there went down in her name. She never conveyed that property to me by any instrument of writing; it is hers."

These statements are clearly sufficient to afford the basis of a rational inference, that Mrs. Green was the sole owner of the mare. Since it appears from them that the note given for the property so purchased was paid out of her earnings as a school teacher, she was to

Ingals v. Ferguson.

the extent of the payments so made, under the statute, the owner of a separate estate in the property so purchased. Nor is her status in this respect affected, if it be held that there was some evidence tending to show that her husband contributed some amount (which the record does not show) to the purchase in question; since it is clear from all the testimony that the title to the property was vested in his wife by his directions, and this is sufficient to imply a purpose on his part to make a gift to her separate use of whatever interest might have otherwise accrued to him by virtue of any contribution on his part to the purchase money of said mare and other stock.   *Welch v. Welch,* 63 Mo. 57.   As this evidence tended to show that Mrs. Green was the sole owner of the mare, the court could not refuse an instruction framed by defendant to cover the issue made by this phase of the case; for the law is well settled that the instructions must cover all the defenses arising upon the evidence.   *Raysdon v. Trumbo,* 52 Mo. 35; *Fitzgerald v. Hayward,* 50 Mo. 516.

The second objection to the instruction, made in said opinion, is that it ignored any theory of estoppel claimed to have been presented by the evidence.   The rule on the subject of estoppel *in pais* has been declared to be: (1) There must have been a false representation or a concealment of material facts. (2) The representation must have been made with knowledge of the facts. (3) The party to whom it was made must have been ignorant of the truth of the matter. (4) It must have been made with the intention that the other party should act upon it. (5) The other party must have been induced to act upon it." *Blodgett v. Perry,* 97 Mo. 273. The testimony in this record wholly fails to make any ground of estoppel against Mrs. Green, tested by the foregoing rules. The plaintiff stated that, after he replevined the mare,

he explained to Mrs. Green the position he was then in, and requested her to forward a copy of a paper which plaintiff claimed the husband of Mrs. Green had executed to him when the mare was first placed in his custody by her said husband. At the time of this conversation, the husband was a fugitive, and plaintiff wanted his signature to the copy in question because plaintiff claimed to have lost the original indorsement.

Mrs. Green forwarded the copy, and it was returned to the plaintiff with the signature of her husband thereon. There is not a particle of evidence in the record that, prior to this time, Mrs. Green had any knowledge whatever of the transaction between her husband and plaintiff in reference to the mare, beyond the bare fact that she knew plaintiff had driven the animal once or twice while it was temporarily in his possession several years before this suit was brought. All that is said on that subject is the following testimony, to wit:

"She knew the mare was in my possession the first six months from March to September, 1888, because I drove out there once or twice with her. and she noted her condition, saying she was looking better, and made remarks of that kind. She made not the slightest objection in the world to my possession of the animal."

The time referred to in the testimony quoted was a period of about six months, several years before the bringing of this suit, when plaintiff had the mare in his possession under an instrument made by the husband of Mrs. Green. There is nothing in this evidence which shows that she knew at that time anything of the nature or consideration of the contract between her husband and plaintiff, whereby the latter was in possession of the mare. The only thing in the record which connects her in any way with the transac-

tion in question was the subsequent request, several years after the redelivery of the mare to her husband and the bringing of this suit, that she would forward the aforesaid copy to her husband for his signature. Plaintiff only sought by this means to avail himself on the trial of this case of an antecedent title to the mare derived from the husband; he did not in any way claim that the wife, Mrs. Green, had parted with any title which she held to said mare. Her compliance with his request in this respect was a mere act of fairness, which could not in the nature of things have *influenced* a transaction between plaintiff and her husband which had transpired several years before. Plaintiff had already acted and acquired a definite status, which, of course, could not have been induced by a subsequent event. This fundamental requisite to estoppel being wanting, no issue of that sort can arise under this record, even if the conduct of Mrs. Green had been sufficient to preclude her on this ground in other respects, which is negatived by the evidence in this record. I conclude, therefore, that the instruction, for the giving of which this case is reversed by my associates, is demonstrably free from the two objections urged in their opinion.

I further hold that the opinion of my associates misconceives the effect of the decision of Judge SHERWOOD in *Cross v. Hulett,* 53 Mo. 397. In that case, which was a replevin suit brought by one of three cotenants against another upon a claim that the latter had sold his interest to the plaintiff, it was held that a judgment for the defendant should not have been given "for the property in suit," since the plaintiff had not parted with his interest therein. Obviously all that was meant by this determination was, that the judgment for the defendant should not have adjudicated the *title* to the property in his favor, since it did

not appear that plaintiff had parted with his own interest therein, and therefore such an adjudication against him would have been in violation of plain rights of ownership. Judge SHERWOOD did not, however, hold, as assumed in the opinion of my associates, that the judgment for the defendant in the case in question should not have awarded the possession to him, if it had appeared on the trial that plaintiff had taken possession of the property when the writ was sued out and held it in his custody at the time. Such a holding would have been in direct contravention of the doctrine announced in that case, which was that replevin "can not be maintained by one joint owner of personal property against his co-owner, for the obvious reason that neither is entitled to the *immediate* and *exclusive* possession of such property." To have decided, as here expressed, that the possession of one joint tenant can not be transferred to another co-owner by an action of replevin, and to have held in the same breath that, if such an action is brought and the plaintiff therein takes possession of the property in dispute before trial, the subsequent judgment rendered in favor of defendant could not restore to him the possession of the property of which he had been deprived by a process of the court, would be in effect the assertion of a legal and logical contradictory, since it is apparent that such holdings would involve the right of a cotenant in an action of replevin to take possession of the common property by order of delivery before trial and hold the same after judgment rendered in favor of defendant, thus making the action of replevin an instrument of accomplishing the very end which it was previously asserted it could not subserve. The theory of my associates in this respect in my judgment is based upon a misapprehension of the facts, as well as the rule of law stated in the case of *Cross v. Hulett,*

*supra,* There is not a scintilla of evidence in that case that the plaintiff therein had possession of the property in dispute, when the judgment was rendered; on the contrary the legitmate inference arising from the want of any such showing is that the possession remained with the defendant all the time. Hence it is evident that the ruling of the learned judge in that case, that the judgment validating defendant's possession should not go further and adjudicate *title* against plaintiff, who was a part owner, was an absolutely correct statement of legal principles, and in strict conformity with the statutory form of judgments in replevin where the possession has remained with the defendant. R. S. 1889, sec. 7491.

I, therefore, hold that the judgment in the present case should be affirmed, and I deem the decision of my associates contrary to the previous decisions of the supreme court herein cited, and request that this cause be certified to the supreme court for determination, as provided by the constitution.