Kelley v. Vandiver.

---

N. F. KELLEY et al., Respondents, v. W. S. VANDIVER et al., Appellants.

St. Louis Court of Appeals, May 10, 1898.

1. **Personal Property:** TIMBER SEVERED FROM LAND IS PERSONALTY: TITLE. It is well settled law that where timber is severed from land it becomes personalty, but the title is not thereby changed.

2. **Replevin:** TITLE TO REAL ESTATE. Title to real estate may be inquired into in an action of replevin.

3. **Record of Deed:** CONSTRUCTIVE NOTICE. The record of a deed can not be made constructive notice of the existence or contents of a deed unless made so by positive statutory enactment.

4. **Replevin:** TENANTS IN COMMON. One tenant in common can not sue another in replevin for the common property.

*Appeal from the New Madrid Circuit Court.*—HON. H. C. RILEY, Judge.

REVERSED AND REMANDED.

J. L. FORT for appellant.

The recording of the patent from Dunklin county to David Cagle in a record kept by the county clerk, and known as "Book of Patents," was not constructive notice to subsequent purchasers from Dunklin county. Martindale on Conveyancing, sec. 271, n. 4; Wendell v. Matthews, 20 Johns. (N. Y.) 658; Barney v. Little, 15 Iowa, 532; Washburn v. Bernham, 63 N. Y. 134, 135; Boyd v. Schlesinger, 59 N. Y. 309; Wade on Notice, secs. 6 and 103; Webb on Record Title, sec. 125. The title to real estate may be tried in an action of replevin. R. S. 1889, sec. 6219; Cobbey on Replevin, secs. 388 and 1023; Caldwell v. Postard, 7 Kan. 303; Parker v. Storts, 15 Ohio St. 351; U. S. v. Steenerson, 1 U. S. C. C. A. 552. There are two kinds of public records whose contents are constructive notice to the public: *First*. Those records which are declared to have that effect. *Second*. Those records which constitute a lien upon land. A purchaser of real estate, who takes the possession thereof by virtue of his purchase, is not bound to record his deed as against a subsequent purchaser of the same land from the same grantor. This is elementary learning. Burton was in the possession of this land at the time the respondents purchased the same from the Cagle heirs, and Kelley, one of the respondents, had actual notice of Burton's possession. This was notice to all of the respondents. Webb on Record Title, sec. 239. This is especially true where the one affected with notice was acting in the negotiation as the agent of the other. Rippetoe v. Dwier, 65 Tex. 703; Potter v. King, 21 Wis. 27.

No brief filed by respondent.

BIGGS, J.—This is an action of replevin to recover the possession of a lot of staves which the defendants had manufactured out of timber cut from land in Dunklin county. The suit was instituted before a justice of the peace in Dunklin county on the twenty-sixth day of August, 1891. Upon the answer and affidavit of the defendants that they and the plaintiffs claimed the land from which the timber was cut under adverse titles the justice certified the cause to the circuit court. After many continuances and two or three changes of venue the case was finally tried in the circuit court of New Madrid county. The trial resulted in a judgment for plaintiffs. Acting upon the supposition that title to real estate was involved the defendants asked and were granted an appeal to the supreme court. That court held that as title to real estate was not involved in the case it was without jurisdiction of the appeal. (Fischer v. Johnson, 139 Mo. 433.) The case was transferred to this court for final determination.

It is well settled law that where timber is severed from land it becomes personalty, but the title to it is not thereby changed. It is also established law that title to real estate may be inquired into in an action of replevin. (Fischer v. Johnson, *supra.*) In the case at bar it is undisputed that the defendants were in the possession of the staves and that the timber from which they were made was cut by defendants from land which was claimed by both plaintiffs and defendants. Plaintiffs asserted no other claim or title to the staves, except that of owners of the land, therefore the title to the land is the only issue in the case.

*Timber severed from land is personalty.*

The land in question was held by Dunklin county as swamp land. Under a special act of the legislature

passed in 1857 (Session Acts 1856–1857, p. 271) the county court was authorized to sell the swamp land belonging to the county and to issue patents therefor. Sections 2 and 3 of the acts are as follows:

"2.   Such patent shall be issued in the name of the state, under the seal of said court, signed by the president thereof, and attested by the clerk, and shall grant and convey to the grantee therein named, all the right, title and interest that the county has acquired to the lands therein named, under an act of the General Assembly entitled "An act donating swamp lands to the several counties in which they lie," approved February 23, 1853, and the other acts of the General Assembly of this state, in regard to the sale and disposal of swamp lands in this state, and all the rights, title and interest to the said lands, which the state of Missouri has acquired to the same under the act of congress entitled "An act to enable the state of Arkansas, and other states, to reclaim the swamp lands within their limits," approved December 28, 1850, or that said state has acquired, or may hereafter acquire, to such lands, by any subsequent acts of congress."

"3.   Such patent shall be recorded before delivery in the office of the clerk of the courts issuing the same, and such patent, and the record thereof, by such clerk, or by any other officer authorized to record deeds and other instruments of writing, and copies of such records, duly authenticated, shall be received in evidence in all courts and other places, in the same manner, and with like effect, and may be used as fully for all purposes as patents for lands issued by the United States, or deeds duly proven or acknowledged, or the record of the same as received, or can be used in this state, and shall, at all times, and in all courts,

and other places, be received as *prima facie* evidence of title to the lands and real estate therein named."

On the nineteenth day of January, 1859, the county court issued to one David Cagle (now deceased) a patent for the land in question. Prior to its delivery, to wit, October 6, 1859, the patent was recorded in the office of the county clerk of the county. It was not filed for record in the office of the recorder of deeds for the county until June 15, 1891. Various objections were made to the introduction of the patent in evidence which we need not notice. The plaintiffs also read in evidence a deed from all the heirs (except one) of David Cagle, conveying to them by quitclaim deed the land in question. This deed is dated May 29, 1891, and was filed for record in the recorder's office of the county on June 12, 1891. These conveyances constitute the plaintiffs chain of title. The defendants' title to the land consists of a patent from Dunklin county to the defendant John Burton. The patent is dated January 3, 1888; was duly recorded with the clerk of the county court as required by the statute, but was not filed for record in the office of the recorder of deeds until September 5, 1893. The evidence shows, without dispute, that the defendant, Burton, was in the actual and visible possession of the land at the time the plaintiffs purchased from the Cagle heirs, to wit, May 29, 1891, and that the plaintiffs had actual notice of his possession. It is also undisputed that at the time Burton bought the land from Dunklin county he had no notice of the previous conveyance to Cagle. He testified that the officers of the county informed him that the land had not been sold, and the assessor of the county told him that it was not assessed to any one. Under this proof the main question is whether the record of the Cagle patent in the office of the clerk of the county court was constructive notice of its

existence and its contents? The defendants asked the circuit court to declare that it was not, which the court refused to do, and to which the defendants excepted.

We are of opinion that the instruction ought to have been given. The record of a deed can not be made constructive notice of the existence or contents of the deed, unless made so by positive statutory enactment. Martindale on Conveyances, sec. 271; Wendell v. Matthews, 20 John. 258; Wade on Notices, sec. 102; Bourland v. County, 16 Ill. 538; Anthony v. Wheeler, 22 N. E. Rep. (Ill.) 494. The mere fact that the record of the patent in the office of the county clerk was a public record and one which the statute required to be kept, does not of itself import notice of its contents to the world, for it is not every public record that has this effect, and none can have it, unless the statute expressly so provides or such is the reasonable or necessary implication. It must be borne in mind that the whole system of registration is a creation of the statutes. Thus in the case of Bourland v. County, *supra*, the power to sell lands was vested in county commissioners and the statute required them to keep a record of their sales. The question in the case was whether such a record was constructive notice of the sales. The supreme court of Illinois held that it · was not, for the reason that the legislature had given no such effect to it. Likewise in the case of Anthony v. Wheeler, *supra*, the same court held that the decree of a probate court for the sale of land belonging to a decedent and the report of the administrator that he had sold the land, did not amount to constructive notice of the deed of the administrator, as against a subsequent *bona fide* purchaser from the heirs. The ruling was placed on the same ground, to wit, that the

statute did not in terms give such records that effect.
So in the present case the statute does not in terms,
nor by reasonable implication, substitute the recording
of the patent in the office of the county clerk for a
record of it in the office of the recorder of deeds, and
thereby by implication making such record construct-
ive notice of the sale of lands by the county and the
issuance of patents therefor. The chief purpose of the
statute was to provide for the use and guidance of the
county court a reliable record showing the lands that
had been sold, so as to prevent the resale of lands,
and to enable the assessor to place swamp lands, when
sold, on the tax books. The record is beneficial to a
purchaser, in that it furnishes *prima facie* evidence of
all facts recited in the patent. We therefore conclude
that the defendants' instruction numbered 1 ought to
have been given.

It was in evidence that the plaintiffs had not
acquired the title of one of the Cagle heirs. On this
evidence the defendants asked, and the court refused,
the following instruction:

"If the court shall find from the evidence in this
case that the staves in controversy were made from
timber which grew upon the land described in defend-
ants' answer herein, and that the only title which the
plaintiffs have to said staves is such as belongs to them
by virtue of having acquired the title of David Cagle
to said lands, and that at the time of the institution of
this suit the plaintiffs had not acquired the title to said
lands from all the heirs of the said David Cagle, then
the finding of the court will be that the plaintiffs can
not recover in this action, and the finding will be for
the defendant, John Burton."

It has been frequently decided in this state that
one tenant in common can not sue another in replevin

forthe common property, upon the ground, among others, that to maintain the action the plaintiff must be entitled to the *exclusive* possession of the property.   Spooner

v. Ross, 24 Mo. App. 599; Deyerle v. Hunt, 50 Mo. App. 541; Ingals v. Ferguson, 59 Mo. App. 299. Whether one of the tenants can maintain the action against a person who is a stranger to the title, has not been authoritatively decided in this state.   In one or two of the decisions it has been stated that the defense is open to any one, but the question was not involved. However, the decisions in many jurisdictions are that way.   (Collier v. Yearwood, 5 Baxter (Tenn.), 581; Hart v. Fitzgerald, 2 Mass. 509; Pickering v. Pickering, 11 N. H. 141; Reed v. Middleton, 62 Iowa, 307; Williams v. Patten, 131 Mass. 50; McArthur v. Land, 15 Me. 245.)   We have no doubt that these cases state the correct rule.   We are therefore of the opinion that the circuit court likewise committed error in refusing to give this instruction.

With the concurrence of the other judges, the the judgment of the circuit will be reversed and the cause remanded.   It is so ordered.   Judge BOND concurs in the result.