# MINE LaMOTTE LEAD AND SMELTING COM-
PANY, Appellant, v. WHITE, Respondent.

### St. Louis Court of Appeals, April 12, 1904.

1. **STATUTE OF FRAUDS: Growing Trees.** Growing trees are a part of the realty and the statute of frauds, section 3418, Revised Statutes of 1899, requires that a contract for their sale be in writing signed by the owner, or by an agent with written authority from the owner.

2. ———: **Name of Grantee: Terms of Sale.** Memoranda for the sale of growing timber, which contain neither the name of the grantee nor the terms of the sale, are insufficient to satisfy the statute of frauds.

3. ———: **Part Performance: Cutting Timber.** The privilege of going upon land to fell trees thereon under a parol contract for the purchase of the trees, and possession of the trees felled, do not constitute a part performance which would take the parol contract out of the statute of frauds; nor is the payment of the purchase price for the timber sufficient.

4. **LICENSE: Revocation.** A license to enter upon land and cut timber thereon is not irrevocable, although the licensee has expended money in the cutting of such timber; otherwise the statute of frauds which requires a contract for the sale of timber to be in writing would be nugatory.

5. ———: ———. A licensee acquires no ownership of trees, or their product, cut by him after he has knowledge that the land, on which they were grown, has been sold and conveyed by the licensor.

6. ———: **Replevin: Real Estate: Timber.** The owner of land may maintain replevin for the possession of lumber sawed from timber cut on such land; the severed timber becomes personalty, but the title thereto remains in the owner of the land.

7. ———: ———: **Intermixture.** And replevin will lie for such lumber although it has become intermixed with other lumber of the same kind and value so that it can not be identified.

Appeal from Madison Circuit Court.—*Hon. R. Anthony,* Judge.

REVERSED AND REMANDED.

*John C. Brown* for appellant.

(1) The court erred in admitting the written memoranda issued by Gabriel and possibly intended as transfers of the timber in controversy. R. S. 1899, sec. 3418; Potter v. Everett, 40 Mo. App. 153. (2) The court erred in refusing each of the instructions asked by appellant. Ins. Co. v. Tillery, 152 Mo. 421; Kelly v. Vandiver, 75 Mo. App. 435. (3) The court erred in modifying plaintiff's instruction numbered one, and in giving it to the jury as modified. Baker v. Campbell, 32 Mo. App. 529; Pratt v. Conway, 148 Mo. 291; State ex rel. v. O'Neill, 151 Mo. 67. (4) The court erred in giving the instruction prayed by defendant, also in giving instructions of its own motion. Nye v. After, 127 Mo. 421; Cobby on Replevin (Ed. of 1890), sec. 384.

*M. R. Smith* for respondent.

(1) Gabriel as agent for Leathe sold to Burnley for a consideration which he turned over to Leathe. Leathe in accepting the money ratified Gabriel's act. Bohlman v. Rossi, 73 Mo. App. 312; 12 Am. and Eng. Ency. Law (2 Ed.), 889. (2) The contract of sale, having been executed, it was not within the statute of frauds and could be established by parol, memoranda, or by both. Brownlee v. Fenwick, 103 Mo. 420; Bowles v. Waltham, 54 Mo. 261; Emmel v. Hayes, 102 Mo. 186. (3) Respondent being in possession under a valid contract of sale at the time of appellant's purchase, appellant purchased with notice of respondent's rights. Bartlett v. Glasscock, 4 Mo. 62; Beatie v. Butler, 21 Mo. 313; Davis v. Briscoe, 81 Mo. 27; Martin v. Jones, 72

Mo. 23.   (4)   It is well settled that where the licensee has paid a valuable consideration to cut off, within a certain time, the trees standing upon lands and afterwards the licensor executes an absolute deed of said lands to a third person who takes with notice of licensee's rights that it will not operate as a revocation of the license until made known to the licensee.   Drake v. Wells, 11 Allen (Mass.) 141.   (5)   And the doctrine in Missouri is that where the licensee has paid the consideration and gone into possession it is irrevocable. Fuhr v. Dean, 26 Mo. 116; Baker v. Railroad, 57 Mo. 265; Gibson v. Association, 33 Mo. App. 165; School District v. Lindsay, 47 Mo. App. 134.

STATEMENT.

Replevin for 10,337 feet of pine timber alleged to have been manufactured by White, the defendant, from trees he felled on land belonging to the plaintiff.   Plaintiff acquired title to the land March 1, 1903, by deed from Samuel H. Leathe.

These admissions were made by the parties at the trial:

"It is admitted that the title to all the land described in plaintiff's petition was vested in Samuel H. Leathe by deed dated April 10, 1897.

"It is admitted that the plaintiff in this case, the Mine LaMotte Lead and Smelting Company, bought the lands described in plaintiff's petition from one Samuel H. Leathe, for a valuable consideration and received a deed, the deed read in evidence here, for such property, on the first day of March, 1903, and that the plaintiff at the time of making such purchase and receiving the deed had no notice that the defendant, R. E. White, had or claimed any interest in the timber which he had cut from this land since the first day of March, 1903."

Leathe's deed to the plaintiff bore another date than March 1, 1903, but by force of the above stipulation

the title to the land is to be taken, for the purpose of this action, as having vested in the plaintiff on that day. Defendant's own testimony proved he cut a great deal of timber, from which the lumber in controversy was manufactured, after that date. He defends on the ground that he owned the trees by purchase from one W. J. Burnley, who had previously purchased them by written memoranda from Samuel H. Leathe, who may be denominated, for convenience, the common source of. title. White's claim to the trees was founded on these facts: J. P. Gabriel testified that in 1897 he became acquainted with Maj. C. F. Stephens, whom he describes. as "general manager" for Samuel H. Leathe; that Stephens employed him to look after Leathe's land in Madison county and gave him verbal authority to sell the timber on it whenever he thought it prudent to do so; that pursuant to said authority he (Gabriel) sold the pine timber on the land mentioned in the petition to W. J. Burnley for $225, which money was paid to Stephens; that he leased to Burnley a mill site September 18, 1901, at $18 a year, the term to expire in October, 1903; that he gave Burnley written memoranda showing what timber was sold to him and a lease of the mill site. Burnley corroborated Gabriel's testimony as to the purchase of the timber and the lease of the mill site and testified that he sold those properties to the defendant White in April, 1902, for $1,150; that the sale was a verbal one, but he turned over to White the memoranda of his purchase from Gabriel. Said memoranda were never acknowledged or recorded. They are recited in the bill of exceptions as follows:

"A plat of township 32, range 7, on which are marked in red the lands where defendant cut the timber in controversy, and on the bottom of which plat is the following indorsement:

"'This is to certify that I have conditionally sold the timber on the land marked red belonging to Mine

LaMotte Company; all other parties are notified to keep off the land so marked.

"'J. P. Gabriel, Agent for M. L. M.

"'Received one hundred dollars in full payment for all saw timber on fourteen forties marked red.

"J. P. Gabriel, Agent for M. L. M.'

"Fredericktown, Mo., Oct. 16, 1901.

"This is to certify that I have this day leased to W. J. Burnley a sawmill site in section 28, township 32, range 7 east, in Madison county, Missouri, for the sum of eighteen dollars a year, payable in advance, the lease to run one year with the privilege of three years, from this date for the sum of eighteen dollars for each year payable in advance. He also has the right to cut all saw timber on sections 21, 22, 27, 28, 29, township 32, range 7, belonging to the Mine LaMotte Company during the term of this lease.

"J. P. Gabriel, Agent for Mine LaMotte."

The following letter was put in evidence by the defendant:

"Fredericktown, Mo., Dec. 15, 1902.

"R. E. White, Esq.,

"Dear Sir: Your letter at hand. I received $17; my contract with Mr. Burnley was $18 a year. Send me one dollar more and this shall be your receipt for mill site. I have not sold any hub timber to any one. Please notify any and all to keep off or Mine LaMotte Company will prosecute them to the full extent of the law. All timber ten inches in diameter was reserved.

"Yours truly,

"J. P. Gabriel."

Plaintiff objected to the admission of those documents for these reasons: Gabriel had no written authority from Leathe to sell any of the timber nor to lease the real estate; the documents show on their faces that Gabriel was pretending to act as the agent of the Mine LaMotte Company and not as agent of Leathe, and the documents were inadequate to pass any interest in the

land or the timber standing on it. An exception was saved to the admission of the memoranda and the letter.

Plaintiff requested these instructions, the first one without the italicised portions:

"1. The court instructs the jury that the deeds and records of deeds read in evidence by plaintiff vested in plaintiff on March 1, 1903, the legal title to the lands described in plaintiff's petition.

"If you find and believe from the evidence that the lumber delivered by the defendant to the sheriff of Madison county, Missouri, was sawed and manufactured from timber cut from the above-described lands by the defendant or his employees since the first day of March, 1903, then your verdict should be for the plaintiff, unless you further find and believe that at the time plaintiff purchased and received its deed for said real estate, it knew of defendant's claim to the timber from which said lumber was manufactured, *or that defendant prior to the purchase by plaintiff on March 1, 1903, had taken possession of the above lands for the purpose of cutting timber thereon, and was in possession and so engaged at the time of plaintiff's purchase of said lands.*

"2. The court instructs the jury that if they find and believe from the admissions made by defendant in open court and by the evidence in this cause that the plaintiff purchased the real estate described in plaintiff's instruction numbered one, on or before March 1, 1903, and at said time paid a valuable consideration for said real estate and received from one Samuel H. Leathe a warranty deed for said property, and that at the time of said purchase plaintiff had no knowledge that defendant claimed the timber from which the lumber in controversy was manufactured, then you will find that the leases and other title papers introduced by the defendant constitute no defense to plaintiff's suit for lumber which was manufactured from timber cut by defendant from said real estate after March 1, 1903.

"3. If you find from the evidence that the lumber

delivered by the defendant to the sheriff of Madison county, Missouri, was sawed and manufactured out of timber cut from the lands described in plaintiff's instruction numbered one and that said timber was cut by defendant or his employees since the first day of March, 1903, then your verdict should be for the plaintiff.

"4.    If the jury find and believe from the evidence that any part of the lumber delivered by the defendant to the sheriff of Madison county, under the writ issued in this case, was sawed and manufactured from timber cut by the defendant or his employees since March 1, 1903, from the real estate described in instruction numbered one, then you will find the issues for plaintiff for so much of said lumber as you may find was manufactured from timber cut by defendant since March 1, 1903."

The court refused to give the first instruction in the form in which it was requested, but added the italicized appendix and gave it in that form.    The other instructions requested by the plaintiff were refused.

At the instance of the defendant and over the objection of the plaintiff, the court gave this instruction:

"The court instructs the jury that if they believe and find from the evidence that Samuel H. Leathe by J. P. Gabriel, his agent, provided you find he was his agent, sold the said timber standing and growing on the land in controversy by means of written memoranda for a valuable consideration to J. W. Burnley, which consideration was paid in full by Burnley and accepted by Mr. Leathe, then it was no concern of plaintiff company or Leathe whether Burnley cut and manufactured the timber into lumber or whether defendant did it, and therefore plaintiff is not entitled to recover in this action, provided you further find that defendant was in the possession of the land and had the right to be in possession by virtue of his contract or license with and from the said Burnley of said land, and that he had cut and manufactured said trees into the lumber replevied,

before the suit was filed by plaintiff May 16, 1903, in this behalf.''

Of its own motion the court gave the following instruction:

''Unless you believe from the evidence that the witness J. P. Gabriel, was the agent of Samuel H. Leathe and as such was authorized by the said Leathe or his general manager to sell the growing timber on the lands described in plaintiff's petition, that in pursuance of such authority, if any he had, he sold the timber on the land in question to one Burnley by a written instrument; that he received the purchase price in full for said timber and transmitted same to said Leathe or his general manager, and that afterwards said Burnley sold and transferred to the defendant for a valuable consideration his interest in said timber, and that prior to the purchase by plaintiff of the said lands, defendant White was put into possession of said timber by Burnley and that while holding such possession he cut and manufactured the lumber in question prior to May 16, 1903, your verdict should be for the plaintiff.''

The jury found a verdict for the defendant and assessed the value of the property taken at $800. Judgment for the defendant was entered according to the verdict.

GOODE, J. (after stating the facts).—The instructions indicate that the trial court was of the opinion that if the defendant was in possession of the land for the purpose of cutting timber when the plaintiff acquired title, the latter could not recover. The land was wild and uncultivated and defendant felled trees where he pleased on any of the different tracts. The question which demands first consideration, and from several points of view, is what right or interest he had in the trees.

If the memoranda of the sale of the timber by Gabriel to Burnley are to be taken as meaning what they

say, Gabriel assumed to act as agent of the Mine La-Motte Company, that is, the plaintiff, in making the sale, and not as agent of Leathe. His testimony as to whom he represented and the authority he had is far from satisfactory, and his conduct in signing the memoranda in the form he did, is incomprehensible if he was Leathe's agent. But the testimony as a whole will support, in a weak way, the conclusion that he represented Leathe by virtue of a general authority from Stephens. It is certain plaintiff did not own the land at that time and that Gabriel was not plaintiff's agent then, though he had been years before.

The law in this State is that growing trees are part of the realty. The title to them lies in grant and must be transferred by the formalities essential to a conveyance of land. An interesting discussion of this proposition, which has been decided in several cases, will be found in Potter v. Everett, 40 Mo. App. 152. Other decisions in point are: Deland v. Vanstone, 26 Mo. App. 297; Andrew v. Costican, 30 Mo. App. 29; Kelly v. Vandiver, 75 Mo. App. 435; Railway Co. v. Truman, 61 Mo. 80. A different rule prevails in some States and in England.

If the memoranda of the sale of the trees were executed by Gabriel in behalf of Leathe and by authority from the latter, they were ineffectual to pass title to Burnley, who sold to the defendant. Hence the defendant acquired no title. As the trees were part of the realty the statute of frauds required a memorandum of the sale of them to be signed by the owner or an agent who held written authority from the owner. R. S. 1899, sec. 3418. Whatever authority Gabriel may have had from Leathe, he produced no written evidence of it; and his authority is said to have been verbal. Moreover, the memoranda relied on do not contain the name of the grantee, nor the terms of sale; which are necessary constituents of a writing sufficient to satisfy the statute. Besides bearing the signature of Gabriel as agent of the

Mine LaMotte Company, one of them explicitly states that Burnley was empowered to cut all saw timber on certain sections of land (those from which the timber in controversy was cut) *belonging to the Mine LaMotte Company;* thereby emphasizing the conclusion that the memoranda were neither given by Gabriel for Leathe, nor understood to be by Burnley. It is impossible to hold those writings accomplished a sale of the trees to Burnley by Gabriel as Leathe's agent in a manner consonant to the statute of frauds.

Possession of the timber by Burnley and White under the contract of sale is relied on to relieve White's claim from the nullifying effect of the statute; that is to say, part performance of the contract. Leathe himself was never in actual possession of the land and the supposed vendees of the timber held no title to any of the land, except the mill site, which could confer constructive possession on them. The constructive possession remained, therefore, in Leathe, the holder of the title. Burnley and White might go on the land to fell trees, but that privilege did not constitute part performance to take a parol contract for the sale of an interest in the land (to-wit, the timber on it) out of the statute of frauds.

Neither was payment of the purchase price sufficient. Bean v. Valle, 2 Mo. 103.

Again conceding for the sake of argument that the memoranda were given in behalf of Leathe, if they were abortive as a contract of sale, they amounted to a license to Burnley to enter and cut timber. But the license was revocable by the plaintiff after it became the owner of the land; and perhaps was personal to Burnley and non-assignable. Potter v. Everett, supra.

We are cited by defendant's counsel to decisions holding that in instances when expense has been incurred under a license, as by making improvements on land, it is irrevocable. The rule prevails everywhere that a license confers right enough to screen a person

acting on it before revocation from liability as a trespasser. Fuhr v. Dean, 26 Mo. 117. But as to a right to exercise a license becoming vested and permanent by making an outlay of money or labor on the faith of it, with the knowledge of the licensor, discord has existed in the courts of some jurisdictions, including this one; as will be seen by turning to the following cases: Fuhr v. Dean, supra; Desloge v. Pearce, 38 Mo. 588; Baker v. Railway Co., 57 Mo. 265; House v. Montgomery, 19 Mo. App. 170; Gibson v. Association, 33 Mo. App. 165; School Dist. v. Lindsay, 47 Mo. App. 134. The doctrine of the irrevocability of licenses grew out of a desire to protect licensees from arbitrary and unjust deprivations of their privileges which would entail serious losses. The rule is applied by raising an equitable estoppel against the licensor on the assumption that he is to blame; as morally he is. But to make the license perpetual by estoppel has the effect of transferring to the licensee an interest in the land in plain disregard of the statute of frauds, which declares such interests must be transferred by a writing. For that reason the doctrine of the irrevocability of an executed license has been abjured in most courts where it was once professed. Brown, Statute of Frauds (5 Ed.), sec. 30 et seq. We will not review the Missouri decisions nor point out their discrepancies; for this was done in the last expression of our Supreme Court on this subject in Pitzman v. Boyce, 111 Mo. 387, a case wherein a license to drain sewer pipes into a sinkhole on the defendant's lot was held revocable, though it had been in force for many years and much money had been spent in improving the subterranean passage on the strength of it. In an excellent opinion Judge SHERWOOD expounded the reasons for denying the perpetuity of a licensed privilege because of outlay. See too, Woodward v. Seely, 11 Ill. 157.

Courts never have held directly that a party acting on a license could acquire an interest in the li-

censor's land; though in giving perpetuity by estoppel to a license they practically did so. It has always been the rule that easements passed by grant and lands by livery or deed. If we accept the contention of the defendant in the present case, we would be conceding to him the acquisition of an estate in the land on which the timber grew, by virtue of a license to enter and cut timber, in the face of the statute of frauds; which says no such interest can be acquired except by a conveyance or a sufficient memorandum.

This defendant knew when the plaintiff bought the land on which he was cutting timber, and if he cut thereafter he did so at his peril.

An authority which is directly in point on the proposition that permission to cut trees may be recalled, though unlike our Missouri decisions as to the need of a writing to pass title to them, is Drake v. Wells, 11 Allen, 141. In that case it is said:

"The doctrine is now well settled that a sale of timber or other product of the soil, which is to be severed from the freehold by the vendee under a special license to enter on the land for that purpose is, in contemplation of the parties, a sale of chattels only, and can not be regarded as passing an interest in the land, and is not for that reason required to be in writing as being within the statute of frauds. Such license to enter on the land of another, so far as it is executed, is irrevocable; because, by the severance of the timber or other growth of the soil from the freehold, in execution of the license, it becomes personal property, the title to which is vested in the vendee absolutely, and the rule applies that where chattels belonging to one person are placed or left on the land of another, with the permission or assent of the latter, the owner of the chattels has an implied irrevocable license to enter and remove them. In such case the owner of land can not, by withdrawing his assent to enter on his premises, deprive the owner of chattels of his property, or prevent him from regaining possession

of them.   The law will not lend its aid to the perpetration of a fraud.   But it is otherwise where the contract had not been executed by a severance of the subject-matter of a contract of sale from the freehold.   So long as the timber or other product of the soil continues in its natural condition, and no act is done by the vendee towards its separation from the soil, no property or title passes to the vendee.   The whole rests in contract. A revocation of the license to enter on the land does not defeat any valid title; it does not deprive an owner of chattels of his property in or possession of them.''

If the principle of some of the cases would protect the defendant in acting under the license so far as to allow him to keep the lumber which he had sawed prior to its revocation, as he had expended labor and money on that lumber, he certainly acquired no ownership of the trees, or their product, cut after he knew the land had been sold.   The instructions requested by plaintiff's counsel only asked a verdict for possession of the lumber manufactured after March 1, 1903; at which date, as is conceded, plaintiff acquired title to the property and the trees which were part of it, without notice of the defendant's claim.   The court erred in refusing those instructions and in adopting the theory that if the defendant was in possession and engaged in cutting timber on March 1st, plaintiff could not recover.   We know of no principle of law which sanctions that ruling.

Defendant's counsel have cited us to decisions supposed to support the proposition that replevin will not lie if defendant's possession continued until the timber was cut and the lumber sawed.   The cases relied on are:   Jenkins v. McKay, 50 Mo. 348; Adams v. Liep, 71 Mo. 596; McAllister v. Lawler, 32 Mo. App. 91; Hayden v. Burkemper, 40 Mo. App. 346; Edwards v. Eveler, 84 Mo. App. 410.   Those authorities hold that a person in possession of land who raises and harvests a crop, may retain it against the purchaser of the land.   This, we suppose, is because growing crops are now held to

be personal property and not part of the realty.    Garth v. Caldwell, 72 Mo. 622; Stafford v. Spratt, 93 Mo. App. 631.    This rule in regard to growing crops being chattels and capable of sale as such before maturity, is a concession to agricultural industry, made because those crops require labor to raise them.    A different rule prevails in regard to timber, which grows without manual labor.    That an owner may maintain replevin for timber cut on his land, has been directly decided in cases like this one; for while severed timber becomes personalty the title remains in the owner of the land.    Kelley v. Vandiver, Andrew v. Costican, supra.    The case last cited is identical in principle with this one.    The plaintiff relied on a memorandum purporting to transfer the title to his partner, the plaintiff claiming as the surviving member of the firm.    The memorandum was construed to have no more force than a bill of sale and to be insufficient to convey title to the logs in dispute to the plaintiff, as timber is part of the realty and must be conveyed as land is.    That was a replevin action for saw logs.

Our conclusion is that no defense was shown to plaintiff's right to the lumber manufactured from trees cut from the land subsequent to its purchase, and that the only question was what portion of the lumber replevied was the product of trees cut after the purchase. There is no proof that plaintiff's lumber had been so mixed with the defendant's as to debar a recovery in specie.    Defendant stated definitely the quantity cut after March 1, 1903, and if that lumber could be identified, or if it could not be because of intermixture with other lumber of the same kind and value, this action will lie.    Kaufman v. Schilling, 58 Mo. 218; Rust, etc., Co. v. Isom, 70 Ark. 99.

The judgment is reversed and the cause remanded. *Bland, P. J.*, concurs, *Reyburn, J.*, absent.