## Frymire v. Dutschke.

(Decided October 14, 1924.)

### Appeal from Breckinridge Circuit Court.

1. Frauds, Statute of.—Contract that owner would furnish standing timber, and that another would do work incidental to manufacture, selling, and delivering it, and that proceeds should be divided in certain proportions need not be in writing, under Ky. Stats., section 1409-13, requiring contracts for sale of standing timber to be in writing.

2. Logs and Logging.—In action by owner of standing timber against one contracting to supply work incident to cutting, manufacturing, selling, and delivering it, evidence held to support finding that under contract owner was to have 40 per cent of gross proceeds of manufactured products rather than 40 per cent of net proceeds.

3. Logs and Logging.—In action by owner of timber against one furnishing work incident to cutting, manufacturing, selling, and delivering timber, for a proportion of the proceeds according to contract, evidence of sales of products from timber in question held to support judgment for $1,821.90 for plaintiff.

4. Logs and Logging.—In action by owner of timber under contract by which defendant was to cut, manufacture, sell, and deliver timber and give plaintifffff a share of proceeds, where defendant had exclusive control of operation and was handling timber from lands of persons other than plaintiff, and failed to keep and furnish account of receipts from sales of timber from plaintiff's land, all reasonable doubts should be resolved against defendant on issue whether timber marketed by him included timber cut from lands of other persons.

HENRY J. TILFORD for appellant.

GUS BROWN and CLAUDE MERCER for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellee, H. A. Dutschke, the owner of a tract of land in Breckinridge county, entered into a verbal contract in 1920 with the appellant, who was to cut and remove certain standing timber from the land of appellee,

and after the manufactured timber had been sold the proceeds were to be divided between them in the proportion of 60 per cent. to appellant and 40 per cent. to appellee.

After the timber had been cut, manufactured, and sold, a dispute arose as to the terms of the contract, and the appellee instituted this action, which resulted in a judgment in his favor against appellant for $1,821.90.

Appellee's version of the contract is that he was to furnish the timber in the tree and appellant was to cut, manufacture and sell same and pay to appellee 40 per cent. of the gross proceeds. Appellant's version of the contract is that he was to take the timber from the stump, manufacture, and sell it, and after the payment of all costs and expenses he was to receive 60 per cent. of the proceeds, and appellee, 40 per cent. He contends that the expenses exceeded the amount for which the manufactured timber was sold, and that he therefore owes the appellee nothing. Appellant first contends that the contract sued on, being verbal, is within the prohibitions of section 1409-13 of the Kentucky Statutes, and hence no action thereon is maintainable.

Section 1409-13 of the Kentucky Statutes expressly requires that a contract for the sale of standing trees or timber shall not be enforceable unless the contract or some memorandum thereof be in writing and signed by the person to be charged or his authorized agent. The contract, however, was not one for the sale of standing timber, but was a contract between appellant and appellee whereby the latter agreed to furnish the standing timber and the former agreed to perform the work incident to manufacturing, selling, and delivering it, the proceeds from the sale of the manufactured product to be divided between them in certain proportions, the appellee thus to receive pay for his timber and the appellant for his labor and expenses incurred in manufacturing and selling it. The contract not being one for the sale of the standing timber to appellant, it does not come within the prohibitions of section 1409-13.

The appellee testified that the contract was made in February or March, 1920, and the appellant testified that it was made in the autumn of that year, and that Fred Smith was present when it was made. Smith testified that he was working for appellant on the latter's farm in 1920, and in the latter part of September or the early

part of October he overheard a portion of a conversation between appellant and appellee relative to the contract in question, in which he heard appellee agree to accept 40 per cent. of the net profits derived from the sale of the timber. He fixes the date of the contract by saying that it was made at a time when he was assisting appellant in preparing ground for seeding wheat. However, checks issued by appellant in payment for work done under the contract were introduced in evidence, and some of them were dated as early as July 31, 1920, showing that the contract had been made prior to that date and long before the date fixed by Smith. The appellee is also corroborated in his version of the contract by J. J. Hayden, who testified that during the summer of 1920 appellant attempted to enter into a contract with him similar to the one the appellant then claimed to have made with appellee. Hayden testified that appellant informed him that he had entered into a contract with Dutschke to cut, manufacture, and sell the latter's timber, and that he was to receive 60 per cent. and Dutschke, 40 per cent., of the gross proceeds derived from its sale.

The preponderance of the evidence supports the finding of the lower court in favor of appellee's version of the contract.

Appellant finally insists that the lower court erred in awarding appellee any sum in excess of $1,403.22, which is 40 per cent. of $3,508.05, the amount appellant concedes he received from lumber manufactured from timber cut from appellee's land. Included in the amount conceded by appellant to have been received by him was $1,066.07 received from the Louisville Point Lumber Company for logs delivered to it at Yellow Bank creek. Officials of the Louisville Point Lumber Company testified that the company paid appellant $1,804.45 for logs delivered to it at Yellow Bank creek, but appellant claims that a portion of these logs were taken from the lands of Sebastian Yates and James Hayden. Both Yates and Hayden testified that none of the logs taken from their land were delivered at Yellow Bank creek.

Various persons testified that they had paid appellant $642.16 for lumber manufactured from trees taken from appellee's land, none of which was included in the statement of receipts submitted by appellant. The total amount which the evidence tends to show was received by appellant from the sale of timber taken from appellee's

land was $4,810.76. Using this amount as a basis, appellant was indebted to appellee in the sum of $1,924.30. This is in excess of the amount found by the lower court.

In view of the fact that appellant was handling timber from lands of persons other than appellee, and that he had exclusive control of the manufacture, sale, and delivery of the timber, it was incumbent on him to keep and furnish a correct account of his receipts from the sales of timber taken from appellee's land, and, having failed so to do, all reasonable doubts should be resolved against him. He alone was in position to furnish a correct and complete statement of his own transactions in regard to the timber taken from appellee's land, but he refused to disclose facts necessarily known by him, and appellee was compelled to discover and produce as witnesses persons to whom appellant had sold the timber.

There being abundant evidence to support the judgment, it is affirmed.