KANSAS CITY STRUCTURAL STEEL COMPANY, a Corporation, Appellant, v. UTILITIES BUILDING CORPORATION, a Corporation.—95 S. W. (2d) 1176.

Division Two, June 30, 1936.*

*NOTE: Opinion filed at September Term, 1935, April 23, 1936; motion for rehearing filed; motion overruled at May Term, June 30, 1936.

*Cooper, Neel, Kemp & Sutherland* and *Frank J. Rogers* for appellant.

70

*Johnson, Lucas, Landon, Graves & Fane* for respondent.

WESTHUES, C.—Appellant filed this suit in the Circuit Court of Jackson County, Missouri, seeking a judgment against respondent in the sum of $11,000. Respondent filed a demurrer to the petition, which was sustained by the trial court. Appellant refused to plead further and judgment was entered. From this judgment appellant appealed.

We will state briefly the essential allegations of the petition. In this statement appellant will be referred to as plaintiff and respondent as defendant. Both parties were Missouri corporations. On May 10, 1930, defendant entered into a contract with plaintiff to furnish and erect the structural steel of an office building which was being built by the defendant. This agreement contained a provision that, as a part of the consideration, the defendant would furnish liability insurance for plaintiff's protection. It is this contract that was made the basis of this suit. The meaning and effect of the following provision thereof is the question for decision.

" 'The owner will maintain, at his (its) expense, such Public Liability Insurance as will adequately protect himself (itself) and the Contractor (meaning plaintiff) from all claims for personal injuries, including death, sustained by employees or members of the public, their dependents, heirs, administrators and assigns, and from all other claims for damage and/or injury to persons which may arise from operations under this contract and under any modifications, alterations, enlargements and supplements thereto, whether such operations be by the Contractor (meaning plaintiff) or anyone directly or indirectly employed by him (it). Public liability limits will be $50,000/$250,000.' "

Plaintiff complied with his part of the contract. During the course of construction one J. C. Montgomery was injured. He sued the plaintiff. The defendant had procured indemnity insurance for plaintiff in the Union Indemnity Company, which policy covered the injury suffered by Montgomery. The indemnity company was notified of the suit and assumed the defense. A trial resulted in a judgment in favor of Montgomery in the sum of $25,000. The case was duly appealed to the Supreme Court. An appeal bond, signed by the Union Indemnity Company as surety, was approved by the trial court. On January 14, 1933, while the case was pending on appeal, the plaintiff was notified that the Union Indemnity Company had been placed in receivership. The surety company refused to further prosecute the appeal. It was unable to pay any part of the judgment. On the application of Montgomery the Supreme Court ordered the plaintiff in this case, the defendant in that case, to file a new *supersedeas* bond. Plaintiff in this action notified the defendant in this case of all of the foregoing facts and requested the defendant to furnish such additional bond as required by this court and to save plaintiff harmless from the judgment, as plaintiff alleged defendant had agreed to do under the provision of the contract as above set forth. The defendant refused to comply with the request and denied that it was bound to do so under the terms of the contract. The plaintiff thereupon assumed the defense of the case and settled the Montgomery judgment of $25,000 for $10,000 and costs. This settlement was made with defendant's consent. Plaintiff demanded reimbursement from defendant, which was refused. It was further alleged in the petition that the Union Indemnity Company was, at the time the Montgomery judgment was entered and prior thereto, insolvent and unable to pay the judgment. It was alleged that, by reason of the facts stated, the defendant breached its contract because it did not maintain such liability insurance as would adequately protect plaintiff from the liability under the Montgomery judgment. It was also alleged that in reliance upon the contract, whereby defendant agreed to procure insurance that would adequately protect plaintiff during the progress of the construction of the building, the plaintiff canceled and abandoned applicable, adequate liability insurance on its own behalf.

As bearing upon the question of law to be presently discussed the defendant called attention to the fact that the petition did not charge that defendant had any notice or knowledge of the insolvency of the Union Indemnity Company until the receivership proceedings were instituted. It is also suggested that the building had been completed prior to the insolvency of the indemnity company.

Respondent contends that, under the contract pleaded, it was merely a broker or agent for the purpose of obtaining liability insurance

for appellant and was not an insurer, a guarantor or indemnitor. It is further contended, by respondent, that the contract was fulfilled when it furnished and maintained a policy of insurance in a company qualified to do business in this State that was considered solvent at the time, and which policy covered the injury sustained by Montgomery.

Appellant on the other hand contends that respondent's obligation, under the contract, was an absolute undertaking to maintain at its own expense such liability insurance as would adequately protect plaintiff from claims for damages; that it did not discharge this duty by the exercise of due care; that in the event of the insolvency of the indemnity company, after a judgment against plaintiff had been obtained, arising out of the construction work, the defendant would have been liable to pay such judgment.

If appellant's contention be correct then the contract must be construed to mean that respondent individually undertook to hold appellant harmless from all claims for personal injuries, etc., arising out of the construction work to be performed by appellant and, therefore, to pay any resulting judgment against appellant. Appellant in its brief states:

"It would have been a very simple matter for the contract to provide that the defendant would procure and maintain liability insurance from a company authorized to do business in Missouri and in whose solvency it had confidence and to have thereby correspondingly limited and restricted defendant's duty and liability. Such a contract could have been, but was not, written."

We concede that the contract could have been written as suggested by appellant, and so too the contract could have been, but was not written placing upon respondent the absolute duty to hold appellant harmless.

A contract must be interpreted in the light of the circumstances surrounding its execution, considering the subject matter of the contract and the end and purpose to be accomplished as important. [13 C. J. 542, sec. 514.] The circumstances of the case, as disclosed by the petition, restated briefly, are: Respondent was the owner of a lot upon which it decided and had planned to erect an office building. Appellant was given the contract to furnish and erect the structural steel. It may be safely said that usually the owner, as well as the contractor, in such a case purchases public liability insurance to protect himself against claims of employees and others who may be injured during the period of construction. In this case the owner, respondent, agreed to maintain, at its expense, such insurance as would adequately protect the contractor, appellant in this case, against such claims. By the wording of the contract the respondent did not personally guarantee and insure the

appellant against harm from such claims, but only agreed that it would, during the entire period of construction, keep in force insurance in a reliable company to protect the appellant against all claims which might arise from personal injuries sustained directly or indirectly for which appellant could be held liable. Had the insurance company become insolvent during the period of construction it would have been the duty of respondent to immediately purchase other insurance. We are of the opinion that that is what was meant by the word "maintain." If insurance in a reliable company was in force during the whole period of construction then insurance was maintained for a sufficient length of time, because any action for damages growing out of an accident would accrue at the time the injury was sustained. The insurer, at that time, would be liable for any judgment rendered as the result of such an injury. By the pleadings it was conceded that the injury sustained by Montgomery was covered by insurance. At the time the accident occurred, therefore, the respondent was maintaining insurance to protect appellant on account of such accidents. The insurance company defended the action and gave an appeal bond which was approved by the trial court, evidencing that it was considered solvent even at that time.

Appellant urges that it was respondent's duty to maintain insurance and, therefore, its duty to furnish a new bond for Montgomery when the case was pending on appeal and the insurer who had furnished bond became insolvent. If that be true, then the contract must be interpreted so as to cast upon respondent the obligation of a guarantor. A strained construction of the wording of the contract would indeed be necessary to cast such a burden upon respondent. In view of the circumstances and the purpose to be accomplished by the agreement such an interpretation is not justified.

Appellant lays great stress upon the word "adequate." It is argued that the word should be construed to mean that by the contract respondent guaranteed the solvency of the insurance company it would select. The cases of Harris v. A. P. Nichols Inv. Co. (Mo. App.), 25 S. W. (2d) 484; Cunningham v. Holzmark (Mo. App.), 37 S. W. (2d) 956, and Ford v. Stevens Motor Car Co. (Mo. App.), 220 S. W. 980, are cited as authority supporting that theory. Upon an examination it will be found that in each case it was discovered that the insurance purchased did not cover the loss sustained. For example, in the Harris case the loss sustained was found not to have been covered by the policy. So in the Cunningham case the agreement was that insurance would be maintained on a car during the life of the installment notes in payment of the car. A theft occurred during this period and it was discovered the policy had expired. To the same effect is the Ford case. It is evident that the cases cited by appellant are not in point. Had the insurance policy, procured

by respondent in this case, expired prior to the date of the Montgomery injury, or had the injury not been protected by the policy, or even had respondent had notice of the insolvency of the company prior to the injury we would have had a different situation. Respondent had in force, in a company considered solvent at the time, a policy covering this particular injury. The event which gave rise to the suit against appellant, by Montgomery, was, therefore, adequately covered by insurance. The word "adequate" cannot, in the sense in which it was employed in the contract, be construed to mean that respondent was a guarantor of the solvency of the insurance company. In the sense in which it was used in this case "adequate" meant that during the period of construction respondent would maintain liability insurance fully sufficient and ample to cover every contingency which may have created a liability against appellant through accidents arising out of the work of construction. The wording of the contract in question does not permit an interpretation so as to render respondent primarily liable to hold appellant harmless. It is evident that the contract was not written with that intention. We think it is also quite evident that it was not written with the intention of making respondent a guarantor of the solvency of the insurance company which would be selected to carry the insurance. To so interpret the contract would do violence to its plain provisions. We are of the opinion that respondent, insofar as the allegations of appellant's petition are concerned, had not breached its contract. The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.