**Lurton H. STAGNER, Plaintiff-Respondent,**

v.

**George STAPLES, Jr., Defendant-Appellant.**

**No. 8660.**

Springfield Court of Appeals.

Missouri.

April 5, 1968.

James A. Cochrane, Jr., Finch, Finch, Knehans & Cochrane, Cape Girardeau, for defendant-appellant.

Robert A. Dempster, Jack O. Edwards, James R. Robison, Dempster, Edwards & Robison, Sikeston, for plaintiff-respondent.

HOGAN, Presiding Judge.

This is an action for breach of an oral contract. The plaintiff has had judgment against the defendant in the amount of $2,000, and the defendant appeals. The sole question before us is whether the agreement was a contract for the sale of an interest in land within the requirement of the Statute of Frauds, Section 432.010, RSMo 1959, V.A.M.S., that such contracts be in writing.

Defendant Staples is a banker and real estate developer. At some time prior to July 1965, Mr. Staples acquired an option to purchase a 31.5 acre tract of land in Sikeston, Missouri. This option was then transferred to Kingsway Plaza, Inc., a Missouri corporation. Mr. Staples was secretary of the corporation, and he, his wife, a Mr. Lowman and his wife, made up the board of directors. The option was taken—and it is fairly inferable that the corporation was formed—so the tract of land involved could be developed as a shopping center. The option was transferred to the corporation during the period of time here involved, but was not exercised until September 30, 1965.

In the early part of July 1965, the plaintiff and a Mr. Berry met with the defendant at defendant's office. They discussed Mr. Staples' proposed development and Staples told the plaintiff "that he wanted the trees taken down and stumps and all the undergrowth and the ground got in good shape to build some buildings." A small photograph of the land introduced in evidence shows that there were indeed a large number of trees on the property at that time. Mr. Stagner asked for time to look at the job, did so, and called on the defendant again the following Sunday.

Plaintiff's offer was that "I would take a tractor and disk and disk the weeds down and I would take the trees out, stump and all, and I would clean the ground. I would pick up all the roots, limbs, and I would disk the ground the second time after I got all of the stuff off of the ground, and Mr. Staples told me that I could push the stumps from these trees back in the southwest corner of the plot of ground and I could have a year's time to get rid of them." Plaintiff agreed to do the job for $6,750 "and I get the timber that was on the ground." According to Mr. Stagner, this meant the timber that had fallen on the ground. Plaintiff did not know the value of the timber precisely, but said it "was over $300," and he was to receive the timber in addition to the sum of $6,750. He planned to do the job with bulldozers, a scraper and a tractor-drawn scoop, and he estimated that he would have realized about $2,750 above expenses, if he had been allowed to perform his contract. His further evidence was generally that Mr. Staples had accepted his offer but had refused to allow him to perform.

Defendant's testimony concerning the nature of plaintiff's undertaking was substantially in accord with Mr. Stagner's. Mr. Staples denied that he had ever accepted the plaintiff's offer, and took the position that he had been acting for the corporation and

had made that clear to the plaintiff. Defendant's evidence was that Mr. Lowman had refused the offer on behalf of Kingsway Plaza, Inc., because Lowman " * * * wanted it reduced to a written contract and * * * wanted insurance and a performance bond," and Stagner was unable to secure insurance or a performance bond. As indicated, a jury has resolved the questions of acceptance and breach, and the only question here is whether the agreement was enforceable without a written memorandum.

At the outset, we have had to consider the possible effect of the Uniform Commercial Code[1] on this transaction. Section 76 of the Uniform Sales Act defines the word "goods" in terms similar to those used in Section 400.2–105, RSMo Supp.1967, V.A.M.S., and some courts have held that under the Uniform Sales Act a contract for the sale of standing timber is a contract for the sale of personalty, even though severance is to be made by the purchaser, because "goods" under the Uniform Sales Act include " * * * emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale." Uniform Sales Act § 76(1); Paullus v. Yarbrough, 219 Or. 611, 347 P.2d 620, 625–633 [3] [4] [5], 79 A.L.R.2d 1222, 1231–1239. But while the Uniform Commercial Code defines "goods" in terms similar to the Uniform Sales Act, the definition has been rewritten, and con-

tracts to sell timber, minerals or structures to be removed from the land are governed by Section 400.2–107(1), RSMo Supp.1967, V.A.M.S.[2] Section 400.2–107(1), RSMo Supp.1967, V.A.M.S. provides that a contract for the sale of timber, minerals or the like is a contract for the sale of goods if severance by the seller is contemplated, but if the buyer is to sever, then the transaction is subject to that part of the Statute of Frauds which deals with transfers of interests in land.[3] Whatever the proper construction of this agreement, Stagner, and not Staples, was to push down the trees, and the Uniform Commericial Code does not change the law respecting the transaction.

Much has been written about contracts for the sale of growing timber as being contracts for the sale of an interest in land within the provisions of the Statute of Frauds,[4] but a discussion of general principles is unnecessary. The parties are not in disagreement as to general principles, but only as to how they apply here. Stressing the fact that Mr. Stagner was to receive the fallen timber as part of the bargain, the appellant maintains the transaction involves the sale or transfer of title to standing timber, and that any oral contract relative thereto was unenforceable. Our courts have consistently held that trees are part of the land, and that contracts for the sale of standing timber are contracts for the sale of an interest in land, required by the Statute of Frauds to be in writing to pass title or to be enforceable.[5] The re-

1. L.1963, pp. 503–638, now codified as Chapter 400, RSMo Supp.1967, V.A.M.S., particularly Sections 400.2–105(1) and 400.2–107(1) and (2), RSMo Supp.1967, V.A.M.S.

2. 20A V.A.M.S. p. 64, Comment 1; Uniform Commercial Code § 2–105, Comment 1.

3. 20A V.A.M.S. p. 70, Comment 1; Uniform Commercial Code § 2–107, Comment 1.

4. Generally, see Anno., 7 A.L.R.2d 517 (1949) ; 5 American Law of Property, § 19.15, pp. 61–63 (A. J. Casner ed. 1952) ; 2 Corbin, Contracts, § 408, pp.

410–415 (1950) ; 1 Thompson, Real Property, §§ 99, 100, pp. 407–418 (Repl. Vol. 1964) ; 2 Tiffany, Real Property, § 598, pp. 538–541 (3rd ed. 1939) ; 2 Williston, Contracts, §§ 515, 516, pp. 1490–1494 (Rev. ed. 1936).

5. Cooley v. Kansas City, P. & G. R. Co., 149 Mo. 487, 493, 51 S.W. 101, 103; Thayer v. Halterman, Mo.App., 10 S.W.2d 663, 665 [5] ; Starks v. Garver Lumber Mfg. Co., 182 Mo.App. 241, 244, 167 S.W. 1198, 1199 [1] ; Mine LaMotte Lead & Smelting Co. v. White, 106 Mo.App. 222, 230, 80 S.W. 356, 358; Potter v. Everett, 40 Mo.App. 152, 161; Anno., supra, 7 A.L.R.2d at 519–520, § 3.

spondent, on the other hand, says that the agreement sued on was only a contract for Stagner's services in preparing the land for construction, and there is indeed a long line of general authority which holds that if a contract of this nature is only a contract of employment to cut down and remove timber, it is not a contract for the sale of an interest in land and need not be in writing.[6] Our problem is to characterize the agreement, bearing in mind that individual contracts do not lend themselves well to topical classification, especially when they are wholly verbal.

■ In this case, the defendant vigorously denied that Stagner's offer was ever accepted, or that he, the defendant, ever became bound as an individual person, since he was only acting for the corporation, but the terms of the contract—what Stagner was to do—are not in dispute. Since this is true, the construction of the agreement is a matter of law, for when the contract is wholly verbal it is the province of the jury to ascertain its terms if they are in dispute, but the determination of the legal effect of the contract belongs to the court. Brannock v. Elmore, 114 Mo. 55, 63–64, 21 S.W. 451, 453–454; Belt v. Goode, 31 Mo. 128, 129–130 [1]. And of course this agreement, being of doubtful meaning, must be construed and interpreted with reference to the circumstances surrounding its execution, taking into account the subject matter of the contract and the apparent object to be accomplished. Kansas City Structural Steel Co. v. Utilities Bldg. Corporation, 339 Mo. 68, 72, 95 S.W.2d 1176, 1177–1178 [1], 106 A.L.R. 244, 246; Tamko Asphalt Products, Inc. v. Fenix, Mo.App., 321 S.W.2d 527, 532 [2]; 17 Am.Jur.2d Contracts, § 246, p. 635.

■ Considering the circumstances in which this agreement was made, and the apparent object to be accomplished, we find the appellant's argument strained and tenuous. When the contract was made, the defendant and his associates were interested in a corporation which had an option to purchase a tract of land, upon which a shopping center was to be constructed. Quite obviously, as a first step it was necessary to clear away the trees and undergrowth and to level the ground, if buildings were to be built. The object which the defendant had in mind was to obtain the plaintiff's services and the use of his heavy earth-moving machinery in clearing the land. It is true enough that the clearing process involved the severance of timber, but there is nothing before us to indicate that it was either party's intention for the plaintiff to acquire any right to use the land simply for the purpose of severance, or to acquire any right or title to the timber until after it was felled and had become personalty. As between the two *types* of contracts we have mentioned, the agreement here seems to us to be a contract of hire for services in clearing the land, rather than an attempted sale of the land or trees or any interest therein, and the fact that the plaintiff was to receive a small part of his compensation in fallen timber would not, in our opinion, convert the contract into an agreement for the sale of standing trees. See Frymire v. Dutschke, supra, n. 6, 221 Ky. 369, 298 S.W. at 984 [1]; Miller v. Davis, supra, n. 6, 187 Iowa 1148, 175 N.W. at 11, 12. In our view, the contract was not within the Statute of Frauds, and was enforceable though it was wholly verbal. The judgment is accordingly affirmed.

STONE and TITUS, JJ., concur.

6. Dobson v. Masonite Corp., 359 F.2d 921, 923 [1, 2] (applying Mississippi law); Simpson & Harper v. Harris & Scrandrett, 174 Ala. 430, 56 So. 968, 970 [2]; Miller v. Davis, 187 Iowa 1148, 175 N.W. 11, 12; Killmore v. Howlett, 48 N.Y. 569, 570–571; Ives v. Atlantic & N. C. R. Co., 142 N.C. 131, 55 S.E. 74, 75–76, 115 Am.St.Rep. 732; Forbes v. Hamilton, 2 Tyler (Vt.) 356; 37 C.J.S. Frauds, Statute of § 75, p. 583. See also Frymire v. Dutschke, 221 Ky. 369, 298 S.W. 983, 984 [1].